LYON, Appellee,

v.

LYON, Appellant.

[Cite as *Lyon v. Lyon* (1993), 86 Ohio App.3d 580.]

Court of Appeals of Ohio,
Scioto County.

No. 92CA–2078.

Decided March 2, 1993.

Steven L. Mowery, for appellee.

James Scott Smith, for appellant.

HARSHA, Judge.

Defendant–appellant, Paul W. Lyon, appeals the June 12, 1992 judgment of the Scioto County Common Pleas Court granting a divorce from plaintiff–appellee, Helen Yvonne Lyon, and distributing property.

Appellant assigns five errors phrased as "Propositions of Law":

"I. The trial court when holding a trial upon a complaint in a common-law divorce action must permit the defendant to introduce evidence as to the very existence of the common-law marriage, including all relevant evidence relating to the commencement date of any common-law marriage that may or may not exist.

"II.   When a domestic referee hears a motion for temporary alimony filed by a plaintiff in a common-law marriage action for divorce and makes a finding for the temporary order that the parties were married on a certain date, but recommends 'The attorneys to request a hearing upon the question of the common-law marriage,' the trial court would commit reversible error by denying the defendant a subsequent hearing on the issue of the common-law marriage, which in fact its' [*sic*] referee had recommended.

"III.   In a divorce action the trial court is required by Ohio Revised Code Section 3105.171 to determine what is marital property and what is separate property.   The court shall disburse a spouse's separate property to that spouse, unless the court makes written findings of fact that explain the factors that it considered in making a different distribution.

"IV.   The trial court abused its discretion and committed reversible error by prohibiting the appellant at trial from introducing testimony relating to the value of a motor vehicle as of the date of the final hearing of the divorce complaint, when the motor vehicle was appraised for a sum greater than the purchase price, appraised in November of 1990, and the final hearing did not occur until October 3, 1991.

"V.   When a motion is pending to terminate a temporary order of alimony in a divorce proceeding a trial court abuses its discretion by summarily granting a lump sum judgment for temporary alimony unpaid prior to hearing the testimony in opposition to request for temporary alimony, particularly when the granting of temporary alimony is inappropriate in light of Ohio Revised Code Section 3105.18."

The parties met in 1960 and sometime after that entered into a common-law marriage relationship, the date of which is disputed.   Appellee filed a complaint for divorce on July 26, 1990.   Appellant filed an answer which denied the existence of a common-law marriage and a "counterclaim" which stated that if such a relationship did exist, it began in December 1960.   In his first amended answer and counterclaim, which was filed after the referee issued his "report," appellant alleged that the parties were previously married by common law, but did not specify a date.   Appellant also admitted paragraph three of appellee's complaint, "Plaintiff and Defendant, on said date [referring to December 1960 in paragraph 2], commenced to live together and held themselves out to the community as husband and wife."

On August 15, 1990, the Domestic Referee of the Scioto County Common Pleas Court filed a "report and recommendation" finding that the parties entered into a common-law marriage in December 1960, and ordering the appellant to pay temporary alimony of $150 per month to appellee.   The referee further recommended "[t]he attorneys to request a hearing upon the question of the common

law marriage." Appellant filed objections to the referee's report, which were overruled by the trial court. Appellant did not object to the finding that the parties commenced a common-law marriage relationship in December 1960. The record does not reveal a motion or any other request for a hearing on the common-law marriage issue, but the defendant's pretrial statement filed August 23, 1991, does request the court to establish May 1, 1980 as the date of the marriage. At trial, the court refused to allow appellant to offer testimony that the common-law marriage began later than December 1960 because the appellant did not object to that finding by the referee.

■ We first note that although Ohio law now prohibits common-law marriages, R.C. 3105.13(B)(1), the state will recognize as valid all common-law marriages that occurred prior to October 10, 1991. R.C. 3105.13(B)(2).

In his first and second assignments of error, appellant contends that the trial court erred by determining the date of the marriage without an evidentiary hearing. We agree.

■ We begin by *sua sponte* addressing a procedural issue under the plain error doctrine. Unlike all other situations involving the use of a referee, Civ.R. 75(M)(1) specifically allows a motion for temporary spousal support, etc. to be heard *and* decided directly by the referee.

Civ.R. 75 states:

"(M) Allowance of spousal support, child support, and custody *pendente lite.*

"(1) When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the *court or referee*, without oral hearing and for good cause shown, *may grant spousal support pendente lite* to either of the parties for the party's sustenance and expenses during the suit * * *.

"(2) Counter affidavits may be filed by the other party within fourteen days from the service of the complaint, answer, counterclaim, or motion, all affidavits to be used by the *court or referee* in making a *temporary spousal support order*, child support order, and order allocating parental rights and responsibilities for the care of children. Upon request, in writing, after any temporary spousal support, child support, or order allocating parental rights and responsibilities for the care of children is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order. A request for oral hearing shall not suspend or delay the commencement of spousal support or other support payments previously ordered or change the allocation of parental rights and responsibilities until the order is modified by journal entry after the oral hearing." (Emphasis added.)

When a matter is heard by a referee by an order of reference under Civ.R. 53, the referee issues a report and recommendation which becomes effective "only when approved and entered as a matter of record by the court." Civ.R. 53(E)(5). Such is not the case under Civ.R. 75(M)(1), which clearly authorizes the referee to decide the issue of temporary support without an oral hearing and to make a temporary *order* regarding the support based solely on affidavits. When a party objects to a temporary order issued either by "the court *or* referee" (emphasis added), Civ.R. 75(M)(2) requires "the court shall grant * * * an oral hearing within twenty-eight days to modify the temporary order." The court may conduct this hearing itself or, by order of reference under Civ.R. 53, direct the matter to the referee. When the referee conducts this oral evidentiary hearing under Civ.R. 75(M)(2), the referee must then file the report required by Civ.R. 53(E). Only then is it necessary to file objections as outlined in that rule.

Support for our interpretation of the rule and its application is found in Baldwin's Ohio Domestic Relations Law (1992), Section 31.09, where the authors state:

"A variation from the general powers of a referee, found solely in the domestic relations setting, is contained in Civil Rule 75(M) governing the allowance of spousal support, child support, and custody pendente lite.

" * * *

"This procedure for the award of temporary spousal support, child support, or allocation of parental rights and responsibilities based on affidavits is applicable only to domestic relations proceedings. It is intended to streamline the processing of these cases by the court and to expedite the issuance of temporary orders so that domestic relations litigants and their children are not disadvantaged by economic inequities during the initial stages of a domestic relations proceeding. * * *

" * * *

"The most interesting aspect of Civil Rule 75(M) as it affects the role of referees in the area of domestic relations concerns the extent of a referee's powers in granting orders pendente lite. The language of the rule indicates that 'the court *or* [emphasis added] referee, without oral hearing and for good cause shown, may grant spousal support pendente lite * * * and may make a temporary order regarding the support, maintenance and allocation of parental rights and responsibilities for the care of minor children * * *.' This language suggests that, in a Civil Rule 75(M) setting, a referee, acting without approval of a judge, may order temporary spousal support, child support, and allocation of parental rights and responsibilities on affidavits. When the referee is the official who holds the oral hearing described in Civil Rule 75(M)(2), the referee must

then file the report required by Civil Rule 53(E). Either party may then file objections to the judge as outlined in that rule."

In making an initial decision on temporary support under Civ.R. 75(M)(1), the referee (or court) need not ordinarily make a factual finding as to the date or duration of the marriage. While it is not clear, it appears that the referee made a specific finding here as an apparent jurisdictional prerequisite to entering an order for temporary support. While we agree that a court has no authority under Civ.R. 75 to enter any temporary order of support where the parties are not married, such a determination need not be made at this stage of the proceedings solely on the ground that the complaint alleged a common-law, as opposed to statutory, marriage. We see no reason to treat common-law marriages different from statutory marriages for the purposes of Civ.R. 75(M)(1).

We are quick to acknowledge that the appellant did not make a specific objection to the referee's finding that a common-law marriage occurred in or about December 1960. However, given the facts that such finding is beyond the scope of a Civ.R. 75(M)(1) hearing, and that the requirement of a report and recommendation under Civ.R. 53 was not applicable, we do not believe appellant has waived his right to produce evidence on the existence of and duration of the alleged common-law marriage. Accordingly, appellant's first and second assignments of error are sustained and the cause is remanded to the trial court for purposes of conducting a Civ.R. 75(M)(2) hearing and a trial on the merits.

Appellant's third assignment of error alleges that the trial court erred in failing to apply R.C. 3105.171. Since that section is not applicable to cases pending prior to its effective date of January 1, 1991, this argument is meritless. The Ohio General Assembly enacted H.B. No. 514, effective January 1, 1991, significantly modifying domestic relations law. The bill divided what was formerly alimony, governed by R.C. 3105.18, into spousal support governed by R.C. 3105.18 and division of marital and separate property governed by a new section R.C. 3105.171. R.C. 3105.171 adopts definitions of marital and separate property and then provides that the division of marital property shall be equal unless it would be inequitable, in which case the court shall divide the property in an equitable manner. The section requires the court to disburse a spouse's separate property to that spouse, and specify the factors that the court must consider in determining the division of marital assets. In R.C. 3105.171(G), the General Assembly added the requirement that the court must make written findings of fact supporting the determination that the marital property was equitably divided and specifying the dates used to determine the meaning of "during the marriage." As noted above, new R.C. 3105.171 and amended R.C. 3105.18 were effective January 1, 1991.

██  This case was filed in July 1990, before the statute took effect, but was brought to a final hearing and was decided after the effective date of H.B. No. 514.  The initial issue becomes whether to apply the new statute to cases pending on the date it took effect.  For the reasons set forth below, we hold that R.C. 3105.171 may not be retroactively applied to cases which were filed prior to its effective date.

R.C. 1.48 states: "A statute is presumed to be prospective in its operation unless expressly made retrospective."  This statutory rule has been interpreted by the Ohio Supreme Court to mean that where there is no clear indication of retroactive application, "then the statute may *only* apply to cases which arise subsequent to its enactment."  *VanFossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, 495, citing *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339, 503 N.E.2d 753, 755.

Having reviewed the language of H.B. No. 514, including its preamble, we cannot find the necessary expression of retroactivity to make R.C. 3105.171 applicable to this case.  We note that the General Assembly did apparently intend to make other sections of the legislation retroactive by virtue of its language evidencing an effort to "clarify" prior changes in R.C. 3105.09.  See H.B. No. 514 at its preamble and Section 3.  See, also, Am.Sub.S.B. No. 3 at Section 5 for an example of legislative intent to provide for retroactive application of domestic relations laws by "clarifying" its prior intent.

██  In sum, we believe that after the commencement of the action, and in the absence of any clear legislative intent otherwise, the parties must proceed under the substantive law applicable upon the date of filing the action.  See, also, R.C. 1.58(A)(1); *Mowka v. Mowka* (Sept. 4, 1992), Lucas App. No. L–91–286, unreported, 1992 WL 213076; *Fields v. Fields* (Nov. 9, 1992), Butler App. No. 91–12–203, unreported, 1992 WL 329451; *Knowles v. Knowles* (Dec. 18, 1992), Lucas App. No. L–92–033, unreported, 1992 WL 371915.  We are quick to note that other courts have decided to the contrary, that R.C. 3105.171 does apply to cases which were initiated prior to its effective date.  See *Houck v. Houck* (Aug. 27, 1991), Franklin App. No. 91AP–296, unreported, 1991 WL 224524; *Lairson v. Lairson* (June 29, 1992), Butler App. Nos. CA91–04–071 and CA91–05–087, unreported, 1992 WL 156121.[1]  These decisions are based upon the premise that R.C.

---

1.  We further note that this court has previously used R.C. 3105.171 to decide cases that were pending on the statute's effective date.  See, *e.g., Barber v. Barber* (July 28, 1992), Ross App. No. 1804, unreported, 1992 WL 188492; *Anderson v. Anderson* (July 7, 1992), Hocking App. No. 91CA1, unreported, 1992 WL 174716; *Crosby v. Crosby* (July 28, 1992), Pickaway App. No. 91CA32, unreported, 1992 WL 188493.  However, in those cases, the parties and the trial court all proceeded as if R.C. 3105.171 was applicable.  Accordingly, we assumed without deciding such was the case.

3105.171 is remedial or procedural in nature, and therefore its retroactive application is not violative of the provisions of Section 28, Article II, Ohio Constitution. However, our reading of *VanFossen, supra,* indicates that a constitutional analysis, with its substantive/remedial distinction, is not appropriate unless and until the statutory limitation found in R.C. 1.48 has been overcome. See *VanFossen,* paragraphs one and two of the syllabus. Appellant's third assignment of error is overruled.

In his fourth assignment of error, appellant argues that the trial court erred in refusing to admit testimony on the value of a motor vehicle at the time of the final hearing. The decision whether to admit relevant evidence falls within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30; *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. The record reveals that the parties filed a joint pretrial statement setting the value of the motor vehicle at $10,000. Because appellant agreed to the value of the vehicle in the joint pretrial statement, the trial court did not abuse its discretion in refusing to allow contrary evidence as to its value. Accordingly, appellant's fourth assignment of error is overruled.

In his fifth assignment of error, appellant contends that the award of temporary alimony was inappropriate and that the court erred in granting a lump sum judgment for arrearages in temporary alimony and rejecting appellant's motion to reconsider the temporary alimony order. In light of the mandatory requirement of Civ.R. 75(M)(2) that the court shall grant a hearing on the motion within twenty-eight days of its filing, we agree. Appellant's fifth assignment of error is sustained.

Accordingly, this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

STEPHENSON and GREY, JJ., concur.